No. 38,370

Julia P. Bartley, *Appellant*, v. Ralph E. Bartley and Anchor Casualty Company, a corporation, *Appellees*.

(233 P. 2d 735)

Opinion filed July 3, 1951.

*Jacob A. Dickinson*, of Topeka, argued the cause, and *Edward Rooney* and *David Prager*, both of Topeka, were with him on the briefs for the appellant.

*Harry K. Allen*, of Topeka, argued the cause, and *L. M. Ascough*, of Topeka, was with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: Plaintiff commenced an action to recover $5,000 as the principal sum due on the bond hereafter mentioned. As the result of a trial she recovered a judgment for the sum of $1,250. Her motion for a new trial having been denied, she has appealed to this court contending that the trial court erred in not rendering judgment in her favor for the full sum of $5,000.

The action on the bond arose out of facts which were stipulated.

On May 4, 1948, Julia P. Bartley, hereafter referred to as Mrs. Bartley or as the appellant, commenced an action in the district court of Shawnee County against Ralph E. Bartley, hereafter referred to as Bartley, for a divorce and obtained personal service of summons on him. On July 31, 1948, Bartley filed his special appearance and motion to quash service of process on him and on April 30, 1949, that motion was denied. On May 3, 1949, Bartley filed a plea in abatement and on May 31, 1949, that plea was denied. On May 31, 1949, Mrs. Bartley's motion for support money and attorney fees was allowed and Bartley was ordered to pay $250 per month for the support and maintenance of Mrs. Bartley and the minor children of the parties and $500 to apply on her attorney fees. On June 2, 1949, Bartley filed his motion for a new trial on the two motions and the plea to which Mrs. Bartley responded with a motion to strike the motion for a new trial and on June 29, 1949, Mrs. Bartley's motion to strike was sustained. Following that ruling and on June 29, 1949, Bartley filed his notice of appeal to the supreme court from the four rulings above mentioned and on the same day filed in the office of the clerk of the district court a bond, which with its title, reads as follows:

### "APPEAL BOND

"KNOW ALL MEN BY THESE PRESENTS: That we, Ralph E. Bartley, as Principal and Anchor Casualty Company, duly authorized to do business in the state of Kansas, are jointly and severally held and firmly bound unto the said Julia P. Bartley in the amount of Five Thousand Dollars ($5,000.00) lawful money of the United States, to the payment of which, well and truly to be

made, we bind ourselves, our heirs, executors, administrators, successors and assigns, firmly by these presents.

"The condition of this obligation is that if the above bounden principal shall without unnecessary delay, prosecute his appeal from the District Court of Shawnee County, Kansas in the matter of Julia P. Bartley vs. Ralph E. Bartley, and pay all sums, damages and costs that may be adjudged against him, then this obligation shall be void; otherwise it shall be and remain in full force and effect.

"In witness whereof, we have hereunto subscribed our names this 28th day of June, 1949.

> "/s/ Ralph E. Bartley
>     Principal
> Anchor Casualty Company
> By /s/ L. A. Bitters
>     L. A. Bitters, Attorney-in-fact."

On the same day the trial court made an order which read:

"Now on this 29th day of June, 1949, the appellant, Ralph E. Bartley, duly files his appeal bond herein in the sum of $5,000.00 with sufficient sureties and asks the court that same be approved.

"IT IS THEREFORE, By the Court, ORDERED that the above and foregoing appeal bond in the sum of $5,000.00 be, and the same is hereby approved.

> "/s/ Beryl R. Johnson
>     District Judge
>     Shawnee County, Kansas"

We here note that although not specifically agreed upon, there is no dispute but that on August 13, 1949, Mrs. Bartley filed her motion in the supreme court for court money, suit money and a restraining order, and upon consideration of that motion, on August 17, 1949, the notice of appeal and the journal entry of judgment were examined and the court found that none of the orders from which the appeal was taken was an appealable order. It was stipulated the appeal was dismissed for the reasons found. It was further stipulated that as of August 17, 1949, date of the above dismissal of the appeal that there had accrued under the order of the trial court for temporary alimony, child support and attorney fees the total of $1,250; that on September 1, 1949, the trial court. made an order for additional suit money of $500 and on that date, the total sum payable amounted to $1,750. A trial of the divorce action was had on September 12, 1949, and resulted in a judgment for Mrs. Bartley for a divorce and for the custody of the minor children and Bartley was ordered to pay her $200 per month for their support and maintenance commencing forthwith; and she was also awarded certain real estate, alimony in the sum of $2,000 pay-

able at the rate of $50 per month commencing October 1, 1949, the sum of $750 due and unpaid under previous orders for temporary support, the sum of $1,000 for attorney fees previously ordered, and the further sum of $750 for attorney fees. It was further stipulated that after the bond was executed, Mrs. Bartley did not cite Bartley for contempt, nor proceed against him in the divorce action and forebore her right to proceed against him in reliance on the bond and that as of August 12, 1950, there was due and owing, under the order of the court, the total sum of $5,477.40.

The instant action was commenced August 25, 1950, by Mrs. Bartley against Bartley and the bondsman Anchor Casualty Company. A recital of all allegations of her petition is unnecessary but she alleged the filing of the divorce action, the order of May 31, 1949, for temporary support and attorney fees; Bartley's motion for a new trial thereon, his appeal to the supreme court and the filing of the bond, a copy of which was attached to the petition, and that in reliance on the bond she did not cite Bartley into court for contempt nor levy execution to collect unpaid child support or attorney fees, but she forbore and continued to forbear any proceedings to compel Bartley's performance; that Bartley's appeal to the supreme court was dismissed and on September 12, 1949, the divorce action was tried on its merits, the terms of the judgment being set forth. Mrs. Bartley further alleged that Bartley had never made any payments on the judgment and decree of September 12, 1949, and refused demands therefor and that there was due and owing as of August 12, 1950, temporary alimony of $750, attorney fees of $1,750, permanent alimony of $550, permanent child support of $2,400 and court costs of $27.40, or a total of $5,477.40, as of August 12, 1950, and she prayed judgment against both defendants on the bond in the amount of $5,000 and for costs. No service of summons was had upon Bartley. Anchor Casualty Company filed its answer in which it denied generally but admitted the making of the order of the district court of May 31, 1949, and that Bartley had appealed to the supreme court and had filed the bond signed by him and the answering defendant, and alleged that at the time Bartley's appeal to the supreme court was dismissed there was due to Mrs. Bartley the sum of $750 support money and $500 attorney fees, and that it had and did offer the sum of $1,250 to plaintiff as the extent of its liability on the bond.

The action was tried on the facts stipulated as above mentioned. On December 28, 1950, the trial court found that the Anchor

Casualty Company was only indebted to Mrs. Bartley for the amount accrued on August 17, 1950, when Bartley's appeal in the divorce action was dismissed by the supreme court; that the sum then accrued was $1,250 and she should have judgment against the company for that amount and judgment was rendered accordingly. In due time Mrs. Bartley filed a motion for a new trial, which was denied. Within two months from the date of the judgment, Mrs. Bartley perfected her appeal to this court from the judgment of December 28, 1950, and from the denial of her motion for a new trial.

Before discussing contentions made in the briefs, we note that under G. S. 1949, 60-3322, provision is made for the staying of judgments and for the giving of supersedeas bonds. That statute provides, in substance, that no appeal from any judgment or final order shall operate to stay execution unless the clerk of the court, in which the record of such judgment or final order shall be, shall take a written undertaking to be executed on the part of the appellant to the adverse party, with one or more sufficient sureties. As applied to the case before us that statute further provides that:

"When the judgment or final order sought to be reversed directs the payment of money, the written undertaking shall be in double the amount of the judgment or order, to the effect that if the judgment or order appealed from . . . be affirmed or the appeal be dismissed, the appellant will pay the amount directed to be paid by the judgment or order . . . and all damages and costs which may be awarded against the appellant upon the appeal. . . ."

The above statute contains no required form of the bond. Appellant directs attention to the language of the appeal bond and to the trial court's order approving it, as well as the above statute, and to the fact that the language of the bond contains provision that appellant "shall without unnecessary delay, prosecute his appeal," and does not contain a provision that Bartley shall pay all damages and costs which may be awarded against the appellant "upon the appeal," and assumes for that reason the bond is not a statutory bond, and she makes an extended argument that the bond was voluntary, not prohibited by statute or contrary to public policy and valid and enforceable as a common-law bond. Upon that premise and in support of her argument she relies on *Gille v. Emmons,* infra, and authorities from the courts of states other than Kansas. Appellee contends the bond given was a statutory bond and its liability is to be measured on that basis.

In a preliminary way it is noted that the general distinction between a statutory bond and a common-law bond is that the former is required by and conforms to a statute, while the latter is one not required by statute, or if required is insufficient to fulfill the statutory requirement (11 C. J. S. 424 and 8 Am. Jur. 708). Where the statute contains a form, slight changes in the form and the use of synonymous phrases, or containing slightly excessive language, do not render the bond void as a statutory bond (11 C. J. S. 429 and 8 Am. Jur. 709). And where the statute does prescribe the conditions of the bond, but the bond does not include all of them, they will be read into the bond to determine liability thereunder (*Farmer v. Rutherford,* 136 Kan. 298, 15 P. 2d 474). The fact that a bond required by statute did not literally comply with statutory requirements received attention in *Ellsworth v. Hurt,* 158 Kan. 232, 146 P. 2d 365, where it was said:

"This court has held that when a statute requires a bond to be given and a bondsman undertakes to furnish it, the obligation of the bond which is imposed by the statute is read into the terms of the bond, and any of its text at variance with the statutory requisites is ignored. Such is the doctrine of the notable case of *Barber County Comm'rs v. Lake State Bank,* 122 Kan. 222, 226-227, 252 Pac. 475. Likewise, in *Duke v. National Surety Co.,* 130 Wash. 276, 227 Pac. 2, it was held that conditions in a statutory bond which are repugnant to the statute are to be treated as surplusage." (l. c. 233)

Other authorities are also cited. It was held:

"Where the statute requires the registration of brokers in speculative securities and the giving of a faithful performance bond as a prerequisite to the issuance of a broker's license, the bond which is given in conformity with the statute must be interpreted in the light of the statute, and any provision of the bond repugnant thereto is to be disregarded." (Syl.)

See also *Kaill v. Bell,* 79 Kan. 358, 99 Pac. 593, where it was held that a bond to discharge an attachment was not void because it contained conditions in excess of those required under the statute.

The omission of the phrase "upon the appeal" after the clause "pay all sums, damages and costs that may be adjudged against him," is not entitled to the weight put upon it by the appellant. Bartley stated as a condition of the bond that he would prosecute his appeal, and the omission of the phrase "upon the appeal" later did not alter his statutory obligation.

In our opinion, the fact that the bond contained the provision that the appeal shall be prosecuted without unnecessary delay and omitted the phrase "upon the appeal" did not render the bond void as a statutory bond, nor did the inclusion and omission mentioned,

result in the bond not being a statutory bond. Nor was the character of the bond changed by reason of the fact this court dismissed the appeal in connection with which the bond was given. The language of the statute contemplates dismissal which ordinarily would result only because of appellant's failure to prosecute, of lack of merit, or because the matter sought to be appealed was not appealable.

We think that *Gille v. Emmons*, 61 Kan. 217, 59 Pac. 338, relied on by appellant, does not support her contention that the bond in question was only a common-law bond and that liability under it extended to undetermined liabilities. Very briefly stated, that action was to recover on a bond to stay execution on a judgment rendered in a foreclosure proceedings. On March 25, 1889, Gille recovered a judgment against Carrie Emmons and her husband. Emmons appealed to this court and gave a bond which is fully set out in the opinion and in general to the effect that if Emmons and others would pay the judgment if it should be affirmed the bond should be null and void, otherwise of full force and effect. The judgment was affirmed. Later in the district court Carrie Emmons had the judgment vacated for the reason she was not a signer of the note secured and that the foreclosure petition had not alleged her liability. Gille appealed to this court, which affirmed the trial court. No execution was issued until after the first affirmance, but one was then issued and the mortgaged property sold, a deficiency of payment of the judgment remaining and an action on the bond was brought to recover that deficiency. Other contentions of error need not be noticed. The court did consider a contention the bond did not conform to the statute and stated it was not in strict conformity to the statute; that the judgment was for sale of the mortgaged premises and for the payment of any deficiency after the sale and that the bond did not provide for the payment of the deficiency; and that the bond was not conditioned against commission of waste, nor for the value of the use and occupation of the property from the date of the undertaking. It did not determine whether the last two conditions were requirements of a supersedeas bond (for statutory requirements then existing see G. S. 1889, § 4652, *Third*). The court further said that the nonconformity of the bond to statutory requirements did not invalidate it; that it was good as a common-law bond; that the parties giving the bond got all they desired under it and could not be heard to urge its lack of conformity to law.

In the case cited the bond was given to protect as against an

existing judgment, not to insure payment of one to be rendered in the future. Further, the parties executing the bond were urging that the bond did not conform to the statute, while here, it is the obligee in the bond who attempts to avoid it as a statutory bond.

In our opinion the slight variances complained of did not convert the bond in question from a statutory bond conditioned to meet statutory requirements into a mere common-law bond.

While perhaps the above disposes of the appeal, we note further that even if the bond be said to be a common-law bond and not a statutory bond, the limit of liability under it was on the order and judgment from which the appeal was taken, and was not any undertaking to pay a judgment which had not been rendered at the date the bond was executed and filed.

We note also that appellant makes some contention that in reliance on the bond she took no steps to have execution levied on any property of Bartley (although there is no showing he had any) nor to enforce the judgment otherwise. Be that as it may, her forbearance did not have any effect in determining the character of the bond given nor to change in any manner the extent of liability thereunder.

The judgment of the trial court is affirmed.